JOURNAL ENTRY AND OPINION
Defendant-appellant Shamarr Stroud appeals from his convictions following a jury trial for aggravated murder with a firearm specification (R.C. 2903.01(A)), having a weapon while under disability (R.C. 2923.13) and possession of drugs (R.C. 2925.11). Defendant contends the trial court committed plain error in its jury instructions; he was denied effective assistance of counsel because defense counsel did not object to the instructions or move to suppress certain evidence; the trial court failed to mention or consider R.C. 2929.14 when it imposed consecutive sentences; and further erred in not acquitting defendant on the aggravated murder charge for lack of prior calculation and design. For the following reasons, we affirm in part and remand for resentencing.
This case arises from the shooting of Donte Myles on June 28, 1997 on East 93rd Street in Cleveland. The victim was found lying in a row of bushes with five gunshot wounds. From the beginning, defendant did not deny that he actually inflicted the five gunshot wounds that led to the victim's death. He contended at trial he was acting in self defense or under provocation.
The State called several eyewitnesses who testified that they saw the defendant shoot the victim, Donte Myles, before reloading and shooting him several more times. Lashonna Griffin, Tamara Hughes and Kenneth Bell all testified that they saw defendant shoot several times into the bushes. Each time, the defendant would take a bullet out of his shirt pocket, load it into the gun and shoot it. He did this approximately four or five times. Lashonna and Tamara both testified that before each shot, defendant stated "Nigger, you don't know me" and then shot into the bushes.
Mark Hughes testified that he also saw the defendant fire three or four shots into the bushes. He then ran up to the defendant and asked him what he was doing. Defendant stopped shooting, looked at Hughes and walked away toward his house. Hughes testified that he then saw the body lying in the bushes. Ruby Scales also testified that she saw the defendant shoot about three times into the bushes before reloading and refiring the gun into the same bushes.
Jamil Mock testified that he was walking with Donte that night when they saw the defendant in the front yard of his house. Mock and Donte started talking to the defendant. After about a minute, the defendant went into his house and upstairs and returned after about a minute. Mock testified that the group then went into the backyard where they were all "chilling out, drinking and talking and stuff and Shamarr and Te [Donte], they was talking." Mock heard defendant and Donte talking loud to each other and then defendant turned his back and pulled a gun out from his side and fired two shots. Mock testified that he and everybody ran. After running about two or three houses down the street, Mock heard four more gunshots. When Mock returned after the gunshots had ceased, he was told that Donte had been shot and he then saw Sanciah Dickson on the ground holding him.
Dickson testified that he was walking back from the store with Donte, but Donte and Mock turned around and went back the other way. Dickson continued walking down the street and sat on Donte's porch. After waiting for Donte and Mock, Dickson heard popping sounds and he started walking back down the street. He then saw a man running up the defendant's driveway with the defendant running after him. The defendant then grabbed the gun with both hands, fired and hit the man who Dickson later discovered to be Donte. Donte then ran between a row of bushes and to a fence where he was shot again and fell into the bushes. Dickson testified that the defendant then ran up to the bushes, looked at the victim, dumped out the bullets, reached in his pocket, reloaded the gun, cocked the gun, said something and shot Dante two more times. After the defendant walked back to his home, Dickson ran up to Donte, pulled him from the bushes and sat on the ground with him lying on his lap.
The State witnesses also included Cleveland Det. Raymond Burant who testified to the crime scene and facts surrounding the search of defendant's apartment following the shooting. Det. Jack Bornfeld testified that he took a statement from defendant the day after the shooting in which he denied shooting the victim. Lt. Frank Bolon and officers Keith Scharf and Ronald Timm testified about locating the defendant and investigating the crime scene as they found it immediately after the shooting. Dr. Stela Miron of the Cuyahoga County Coroner's Office testified that the victim received five gunshot wounds which caused his death.
Defendant was the only defense witness. Defendant testified that he was sitting on his porch drinking a forty ounce bottle of beer when Jamil Mock and Donte came onto his porch and demanded that he give them a rock of crack cocaine. Defendant did not know Donte at the time. Defendant testified that he had just previously finished smoking a rock mixed with a cigarette and he had another rock in his hand. Defendant testified that after he refused to give them the rock, an altercation started during which Donte kneed the defendant in the groin and he retreated into his house to recover from the hit.
Defendant came back out about twenty minutes later after he saw that the two men had walked down the street. He then attempted to walk to a store to buy more cigarettes, but was stopped and harassed by the two men and defendant again retreated home. However, as defendant was walking to his driveway, the men followed him and "took a couple swings at me, punching, calling me all kinds of names, harassing, ridiculing me, just making mockeries of me and everything." According to defendant, Donte then pulled a small "Dillinger" from his pocket and fired it at defendant. After this first shot, defendant pulled out a gun and reciprocated with gunfire, thereby killing Donte. Defendant remembers the first shot, but nothing thereafter. No gun was ever found in the area or near the victim's body.
We will address defendant's assignments of error in the order asserted.
 I. THE TRIAL COURT COMMITTED PLAIN ERROR IN VIOLATION OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10, OF THE OHIO CONSTITUTION WHEN INSTRUCTING THE JURY ON VOLUNTARY MANSLAUGHTER WHEN ITS INSTRUCTION FAILED TO GIVE THE JURY AN OPPORTUNITY TO DETERMINE WHETHER OR NOT THE APPELLANT WAS ACTING UNDER A SUDDEN FIT OF PASSION OR RAGE.
In his first assignment of error, defendant asserts that the trial court's charge on voluntary manslaughter was erroneous in that "the jury could not properly determine the mitigating factors because the jury as instructed never had to consider them." (Aplt's Brf. at 7). Defendant also asserts that the trial court's instruction required the jury to unanimously find him guilty of aggravated murder or the lesser included offense of murder before it could consider the voluntary manslaughter offense. These contentions are without merit.
In the instant case, the record reflects that the trial court correctly charged the jury on aggravated murder, murder and voluntary manslaughter. The State correctly asserts that the instructions given by the trial court mirror those set forth in Ohio Jury Instructions. 4 Ohio Jury Instructions (1997), Sections503.01(A) — 503.3. The relevant portion of the court's charge is as follows:
 Guilty of murder. If you find that the State proved beyond a reasonable doubt all the essential elements of the lesser offense of murder, your verdict must be guilty of murder and in that event you will not consider any lesser offense.
 Not guilty of murder. If you find that the State failed to prove any one of the essential elements of the offense of murder, you must find the defendant not guilty of murder.
 If you are unable to agree that the State proved any of the elements of murder, you will proceed with your deliberation and decide whether the State has proved beyond a reasonable doubt the essential elements of the second lesser offense of voluntary manslaughter.
 Now, the firearm specification will apply to the first lesser included-offense, and I've already read those definitions for you, correct? Very good.
 The second lesser-included offense that I'm inserting here is voluntary manslaughter. You must further consider the offense charged in the indictment. If you find that the State proved beyond a reasonable doubt all the essential elements of aggravated murder, your verdict must be guilty as charged, according to your findings.
 However, if you find that the State failed to prove beyond a reasonable doubt all the essential elements of aggravated murder, then your verdict must be not guilty of that offense, and in that event, you will continue your deliberations to decide whether the State has proved beyond a reasonable doubt all the essential elements of the lesser-included offense of voluntary manslaughter.
 Now, if you find or if all of you are unable to agree on a verdict of either guilty or not guilty of aggravated murder and then you move on to the murder, then you get to his, the second lesser, then you will continue your deliberations to decide whether the State has proved beyond a reasonable doubt all the essential elements of the lesser-included offense of voluntary manslaughter.
 Before you can find the defendant guilty of voluntary manslaughter, ladies and gentlemen, you must find that the State has proved beyond a reasonable doubt that on or about the 28th day of June, 1997, and in Cuyahoga County, Ohio, the defendant knowingly caused the death of Donte Myles while under the influence of sudden passion or in a sudden fit of rage, either of which was brought on by serious provocation, occasioned by Donte Myles, that was reasonably sufficient to incite the defendant into using deadly force.
 Ladies and gentlemen, "knowingly" and "cause" have been previously defined for you and the same definitions apply herein.
 Sudden passion, sudden fit of rage. Now, an act committed while under sudden passion or in a sudden fit of rage brought on by serious provocation, occasioned by the victim, that is reasonably sufficient to incite a person into using deadly force is an act done in the heat of blood without time to reflect or for passions to cool.
 Now, the alternative sudden passion defined. The passion or fit of rage, must be sudden, without time for reflection or for passions to cool. It must be brought on by serious provocation to reduce aggravated murder or murder to voluntary manslaughter.
 Serious provocation. Now, ladies and gentlemen for provocation to be reasonably sufficient to bring on sudden passion or a sudden fit of rage, you must determine (1) that the provocation was sufficient to arouse the passions of an ordinary person beyond the power of his or her control.
 And too, the defendant was actually under the influence of sudden passion or a sudden fit of rage at the time of the act.
 The emotional state of the defendant, ladies and gentlemen. Now, in determining whether the defendant was actually under the influence of sudden passion or a sudden fit of rage, you must consider the emotional and mental state of the defendant, and the conditions and circumstances that surrounded him at the time of the act * * *.
 If you find that the State failed to prove beyond a reasonable doubt that the defendant purposely or knowingly caused the death of Donte Myles, then you must find the defendant not guilty of murder and not guilty of voluntary manslaughter.
 If you find that the State proved beyond a reasonable doubt that the defendant purposely caused the death of Donte Myles, and you find that the defendant failed to prove by the greater weight of the evidence that he acted while he was under the influence of sudden passion or in a sudden fit of rage, either of which was brought on by serious provocation, occasioned by the victim, that was reasonably sufficient to incite the defendant into using deadly force, then you must find the defendant guilty of murder.
 If you find that the State proved beyond a reasonable doubt that the defendant purposely or knowingly caused the death of Donte Myles but you also find that the defendant proved by the greater weight of the evidence that he acted while under the influence of sudden passion or in a sudden fit of rage, either of which was brought on by serious provocation, occasioned by the victim, that was reasonably sufficient to incite the defendant into using deadly force, then you must find the defendant guilty of voluntary manslaughter.
(Tr. at 807-12)
First, the record reflects that defense counsel made no objection at trial that the jury instructions were erroneous. "Failure to object to a jury instruction constitutes a waiver of any claim of error relative thereto, unless, but for the error, the outcome of the trial clearly would have been otherwise."State v. Underwood (1983), 3 Ohio St.3d 12, syllabus; State v.Long (1978). 53 Ohio St.2d 91. In State v. Williford (1990),49 Ohio St.3d 247, 251 the Supreme Court found that "[w]e have repeatedly held that a failure to object before the jury retires in accordance with the second paragraph of Crim.R. 30(A), absent plain error, constitutes a waiver." Crim.R. 30(A) states in pertinent part:
 On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider the verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury.
Defendant specifically asserts that the trial court committed plain error when it instructed the jury that if it found that the State failed to prove the requisite elements of aggravated murder, then its verdict must be not guilty of that offense "and in that event, you will continue your deliberations to decide whether the State has proved beyond a reasonable doubt all the essential elements of the lesser-included offense of voluntary manslaughter." Defendant also asserts that the court's use of the phrase "then you get to this" constituted plain error.
In examining the trial court's jury instructions, we do not review portions of those instructions in isolation, rather we review the court's charge as a whole in determining whether the jury was properly instructed. State v. Burchfield (1993), 66 Ohio St.3d 261,262. We find that the trial court correctly charged the jury on aggravated murder, murder and voluntary manslaughter.
The trial court first correctly instructed the jury on the charge of aggravated murder and murder, as a lesser offense, exactly as set forth in O.J.I. Section 503.015(A). The court then fully instructed the jury on the charge of voluntary manslaughter and it defined "sudden passion," "sudden fit of rage" and "serious provocation." The above instructions reflect that the trial court specifically instructed the jury that if it found that the State proved beyond a reasonable doubt that the defendant knowingly caused the death of Donte Myles and if it found that defendant failed to prove by a greater weight of the evidence that the defendant acted while under the influence of sudden passion or in a sudden fit of rage, either of which was brought on by serious provocation occasioned by the victim that was reasonably sufficient to incite the defendant into using deadly force, then it must find the defendant guilty of murder. The court then correctly instructed the jury that if it found that the State proved beyond a reasonable doubt that the defendant knowingly caused the death of Donte Myles and if it found that defendant also proved by a greater weight of the evidence that the defendant acted while under the influence of sudden passion or in a sudden fit of rage, then it must find the defendant guilty of voluntary manslaughter.
Accordingly, we find that the trial court correctly and accurately charged the jury on the law and clearly explained to the jury how it was to deliberate on aggravated murder and murder and how it was to consider the mitigating circumstances of voluntary manslaughter. There was no plain error which would justify overturning this jury verdict.
Defendant's Assignment of Error I is overruled.
 II. SHAMARR STROUD WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10, OF THE OHIO CONSTITUTION WHEN HIS COUNSEL FAILED TO OBJECT TO JURY INSTRUCTIONS.
In his second assignment of error, defendant asserts that he was denied effective assistance of counsel by defense counsel's failure to timely object to the jury instructions given to the jury by the trial court. This assertion is also without merit.
This Court described the standard of review to make a showing of ineffective assistance of counsel in Lakewood v. Town (1995),106 Ohio App.3d 521, 525-26:
 * * * The standard of review for ineffective assistance of counsel requires a two-part test and is set forth in Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. See, also, State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. "[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland at 687-688, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. The defendant must also prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.
Furthermore, when determining whether counsel's performance was deficient "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Strickland v.Washington (1984), 466 U.S. 668, 689.
Given our finding that the trial court correctly and adequately instructed the jury, defendant cannot establish that he was prejudiced by counsel's failure to object to such instructions. Therefore, we find no ineffective assistance of counsel respecting the jury charge.
Defendant's Assignment of Error II is overruled.
 III. SHAMARR STROUD WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10, OF THE OHIO CONSTITUTION WHEN HIS COUNSEL FAILED TO FILE A MOTION TO SUPPRESS EVIDENCE.
In his third assignment of error, defendant asserts that defense counsel was ineffective in failing to file a pre-trial motion to suppress the evidence of the live and spent .38 caliber bullets and crack cocaine found by the police in defendant's apartment. This assertion is without merit.
As discussed above, in order for defendant to establish ineffective assistance of counsel he must show that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Furthermore, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance and constitutes sound trial strategy. We find that defense counsel's conduct did not rise to the level of ineffective assistance of counsel.
The evidence presented reflects that defendant had nothing to gain by suppressing the bullets and crack cocaine found in his apartment. During his testimony, defendant admitted to shooting the victim with the .38 caliber revolver. Defendant further admitted that he was in possession of cocaine and had smoked it prior to the shooting.
The main issue before the jury was whether defendant's actions constituted aggravated murder, murder, voluntary manslaughter or self-defense. At no time before or during trial did defendant deny that he was the shooter. Accordingly, defendant has failed to establish how he was prejudiced by the introduction of the bullets and the cocaine.
We also find that the warrantless search of defendant's apartment was not illegal and the challenged evidence did not constitute inadmissible fruits of the search. TheFourth Amendment of the Constitution of the United States and Article I, Section 14 of the Ohio Constitution protect against unreasonable searches and seizures. When these prohibitions are violated, the Exclusionary Rule precludes the introduction of evidence obtained as the result of the unreasonable search and seizure. Wong Sun v.United States (1963), 371 U.S. 471; Mapp v. Ohio (1961),367 U.S. 643. In Cleveland v. Shields (1995), 105 Ohio App.3d 118, 121, the Court stated:
 Absent probable cause and exigent circumstances, warrantless arrests in the home are prohibited by the Fourth Amendment. Payton v. New York (1980), 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639. Such warrantless searches are "`per se unreasonable * * * subject only to a few specifically established and well-delineated exceptions.'" Mincey v. Arizona
(1978), 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290, 298-299. The four exceptions to the warrant requirement justifying a warrantless search of a home are "(1) an emergency situation, (2) search incident to an arrest, (3) `hot pursuit' and (4) easily destroyed or removed evidence." State v. Cheers
(1992), 79 Ohio App.3d 322, 325, 607 N.E.2d 115, 117.
Under the "hot pursuit" exception to the warrant requirement, a person cannot avoid arrest by escaping from a public place to a private place. United States v. Santana (1976), 427 U.S. 38,42-43; Shields, supra at 122. The State correctly asserts that the facts of the instant case are very similar to those in Wardenv. Hayden (1967), 387 U.S. 294. In Hayden, two cab drivers followed an armed robber to a house. One of the drivers radioed the police dispatcher that the suspect had entered the house and the dispatcher relayed the information to the responding officers. Within minutes, the officers arrived, knocked on the door and the suspect's wife answered. The officers told her that they believed the suspect had entered the house and asked to search the house. She did not object. During the search, the officers found the defendant in an upstairs bedroom. They also found a shotgun, a pistol and clothing in the washing machine that matched those of the fleeing suspect. The Supreme Court held that the officers acted reasonably when they entered the house and began to search for the man of the description they had been given and for weapons which he had used in the robbery or might use against them. Id. at 298. The Court found that "theFourth Amendment does not require the police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others." Id. at 298-299.
Similarly, in the instant case, several eyewitnesses told the investigating officers that the shooter had fled into his house with the weapon. The officers arrived at the house where they were met by defendant's mother who gave them permission to search the house for the defendant. Upon entering defendant's apartment, the officers observed several rocks of cocaine in plain view on the table. In the bedroom, the officers observed three live .38 caliber rounds and three spent rounds in plain view on the end table. However, defendant was not found in the house.
Based on these facts, we find that the officers acted reasonably when they entered the house and began to search for the defendant and for weapons which he may have used in the shooting or might use against them. The evidence reflects that the armed defendant fled the scene and entered the house only minutes before the police officers arrived. Therefore, in accordance with Hayden, supra, we find that the subsequent search of the house was not in violation of the Fourth Amendment.
Furthermore, the warrantless search of defendant's apartment was authorized by voluntary consent from a person with authority to give consent, his mother who owned the house. It is well settled that consent to a warrantless search may be given by a third party who has common authority over or other sufficient relationship to the premises to be searched. United States v.Matlock (1974), 415 U.S. 164; State v. Sneed (1992), 63 Ohio St.3d 3,7; State v. Redd (June 23, 1994), Cuyahoga App. No. 65671, 65672, unreported. Under Ohio law, a parent who owns or has a right to control the premises wherein a child resides may consent to a search of the premises although the search may produce incriminating evidence against the child. State v. Meyer
(May 25, 1995), Cuyahoga App. No. 67529, unreported, citing Statev. Chapman (1994), 97 Ohio App.3d 687; State v. McCarthy (1971),26 Ohio St.2d 87, 92; State v. Carder (1966), 9 Ohio St.2d 1, 10;State v. Gavin (1977), 51 Ohio App.2d 49, 55.
The evidence reflects that defendant lived in an apartment located on the third floor of a house owned and lived in by his mother. His mother lived on the first floor of the house. Under the above case law, defendant's mother had common authority over the house and had a sufficient relationship to the house to give consent to the search of the house including defendant's third floor apartment.
Clearly, the filing of a motion to suppress would have been futile in this case. More importantly, suppressing the evidence was immaterial to the defense. Therefore, choosing not to move to suppress the evidence was a tactical decision made by an experienced trial lawyer. We will not second guess that decision.
Defendant's Assignment of Error III is overruled.
 IV. THE TRIAL COURT ERRED WHEN IT FAILED TO MENTION OR CONSIDER R.C. § 2929.14
WHEN IT SENTENCED THE APPELLANT TO CONSECUTIVE SENTENCES.
In his fourth assignment of error, defendant asserts that R.C.2929.21(B)(2)(c) requires the trial court to make a finding on the record giving its reasons for selecting consecutive sentences. Defendant asserts that the trial court failed to make the requisite findings pursuant to R.C. 2929.14(E)(3) before imposing defendant's consecutive sentences. This assertion is well taken.
R.C. 2929.19(B)(2)(c) requires the trial court to make a finding that gives its reasons for selecting the sentence if it imposes consecutive sentences under R.C. 2929.14. R.C. 2929.14(E) states in pertinent part:
 (3) If multiple prison terms are imposed upon an offender for convictions of multiple offenses, the court may require the defendant to serve the terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime, or to punish the offender and that consecutive sentences are not disproportionate to seriousness of the offender's conduct and to the danger that the offender poses to the public, and if the court also finds any of the following:
* * *
 (b) The harm caused by multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
In sentencing the defendant in the instant case, the court stated as follows:
 * * * the way you did it, you know, the way you did it is just beyond all realm, and people don't' shoot animals like that. You're a sick individual and I'm going to order you to serve 20 years to life on count 1, but you're going to serve 3 years for the gun before you start your 20 years to life.
 On count 2 you're going to serve 11 months consecutive to the 10 to life.
 On count 3, you're going to serve 17 months consecutive to the 11 months, and consecutive to the 20 years plus the 3 years for the gun. I'm going to fine you $25,000 on count 1, $2,500 on count 2, and $5,000 on count 3 to go to the victim's crime in the State of Ohio. All are to run consecutive.
Pursuant to R.C. 2929.14(E)(3), the trial court may impose consecutive prison terms for convictions of multiple offenses upon the making of certain findings enumerated in the statute. Furthermore, under R.C. 2929.19(B)(2)(c). if the trial court imposes consecutive sentences, it must make a finding on the record giving the reasons for imposing consecutive sentences.
In the instant case, the trial court's use of "people don't shoot animals like that" and "you're a sick individual" was insufficient to satisfy the statutory requirements for the imposition of consecutive sentences. R.C. 2929.14(E)(3) requires the trial court to make a finding that the consecutive sentences are necessary to protect the public from future crime or to punish the defendant and that the consecutive sentences are not disproportionate to the seriousness of the defendant's conduct and to the danger posed by the defendant to the public. The trial court must also make a finding that the harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses adequately reflects the seriousness of the defendant's conduct. R.C. 2929.14(E)(3)(b). The record clearly reflects that the trial court did not comply with the statutory requirements of R.C. 2929.14(E). See State v. Albert
(1997), 124 Ohio App.3d 215, 224-225; State v. Smith (Mar. 17, 1999), Meigs App. No. 98CA02, unreported; State v. Jackson (Feb. 5, 1999), Erie App. No. E-97-116, unreported; State v. Johnson
(Oct. 23, 1998), Hamilton App. No. C-980013, unreported; State v.Church (Aug. 28, 1998), Licking App. No. 98CA34, unreported.
Because the record fails to reflect the requisite findings for the imposition of consecutive sentences, this case must be remanded to the trial court for re-sentencing. Upon remand, the trial court is to reconsider whether consecutive sentences are warranted, and if so, to make the required findings on the record.
Defendant's Assignment of Error IV is sustained.
 V. THE TRIAL COURT ERRED WHEN IT DID NOT GRANT THE APPELLANT'S CRIM.R. 29 MOTION WHERE THERE WAS INSUFFICIENT EVIDENCE OF AGGRAVATED MURDER BECAUSE A REASONABLE FACTFINDER COULD NOT FIND THAT THE EVIDENCE ESTABLISHED PRIOR CALCULATION AND DESIGN BEYOND A REASONABLE DOUBT.
In his fifth assignment of error, defendant asserts that there was insufficient evidence to establish beyond a reasonable doubt that defendant shot the victim with prior calculation and design. Therefore, the evidence was insufficient to support his aggravated murder conviction and his Crim.R. 29(A) motion for acquittal should have been granted. This assertion is also without merit.
Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses. A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. See State v.Wolfe (1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. See. Id.
An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The standard of review with regard to the sufficiency of evidence was recently summarized by the Supreme Court in State v. Smith (1997), 80 Ohio St.3d 89,113, as follows:
 Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict, State v. Thompkins (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541, 546, whereas the "[w]eight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" (Emphasis sic.) Id. at 387, 678 N.E.2d at 546.
 In reviewing the record for sufficiency, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. * * *
Recently, this Court in State v. Hopson (April 8, 1999), Cuyahoga App. No. 73309, unreported, defined "aggravated murder" and "prior calculation and design" as:
 The essential elements of the offense of aggravated murder pursuant to R.C. 2903.01 are that a person (1) purposely, (2) with prior calculation and design, (3) causes the death of another. Defendant-appellant contends that the essential element of prior calculation and design was not proven beyond a reasonable doubt. While the statute does not define prior calculation and design, numerous courts have established the requisite proof necessary to prove prior calculation and design beyond a reasonable doubt. In State v. Cotton (1978), 56 Ohio St.2d 8, at paragraph three of the syllabus, the Ohio Supreme Court held: "where evidence adduced at trial reveals the presence of sufficient time and opportunity for the planning of an act of homicide to constitute prior calculation, and the circumstances surrounding the homicide show a scheme designed to implement the calculated design to kill, a finding by the trier of fact of prior calculation and design is justified." It is not required that a prolonged thought process be demonstrated. State v. Johnson (Dec. 3, 1998), Cuyahoga App. No. 72541, unreported. Even when a defendant only has instants to design the death of the victim, it will be sufficient. State v. Bailey
(1992), 90 Ohio App.3d 58, 73. In State v. Taylor
(1997), 78 Ohio St.3d 15, 18-20, the Ohio Supreme Court reviewed the meaning of the term prior calculation and design. The Court determined that, based upon a review of Ohio case law dealing with the issue, it is not possible to formulate a bright-line test that emphatically distinguishes between the presence or absence of prior calculation and design. Each case turns upon the particular facts and evidence presented at trial. State v. Johnson, supra.
 In State v. Jenkins (1976), 48 Ohio App.2d 99, the appellate court considered three factors in determining whether prior calculation and design exists: (1) Did the accused and the victim know each other and, if so, was that relationship strained? (2) Did the accused give thought or preparation to choosing the murder weapon or the murder site? (3) Was the act drawn out or "an almost instantaneous eruption of events? See, also, State v. Taylor, supra, at 20.
The evidence presented at trial was sufficient for a rational factfinder to find that defendant purposely killed the victim with prior calculation and design. The evidence established that immediately prior to the shooting defendant was in a heated discussion with the victim during which the defendant went into his house and returned minutes later. There were also five eyewitnesses who testified that they saw the defendant chase down the victim and shoot him. These witnesses also testified that as the victim laid wounded in the bushes, the defendant reloaded his gun and shot the victim several more times. The victim died of five gunshot wounds.
Based on these facts, it was reasonable for a trier of fact to conclude that during the confrontation with the victim, the defendant retrieved a gun from his apartment and concealed it in his waistband before returning. It was also reasonable for the jury to conclude that defendant had "sufficient time and opportunity for the planning" of the killing and had a "scheme designed to implement the calculated design to kill" when he pulled out the gun during an argument with the victim, shot at the victim, chased down the wounded victim as he attempted to escape, emptied the gun, reloaded it and shot the victim several more times. Furthermore, there was no evidence other than defendant's own testimony that the victim first pulled a gun or that he even had a small gun in his possession at the time of the shooting.
We find that there was sufficient evidence presented at trial to establish prior calculation and design beyond a reasonable doubt. Therefore, the trial court properly overruled defendant's Crim.R. 29(A) motion for acquittal.
Defendant's Assignment of Error V is overruled.
Judgment affirmed in part; remanded for resentencing.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed in part, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DYKE, J., and O'DONNELL, J., CONCUR.
 __________________________________ JAMES M. PORTER ADMINISTRATIVE JUDGE